# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RODEE HOUSING CORP.,<br>a Delaware Corporation, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. N13C-05-235 DCS |
| | ) | |
| UNIVERSITY OF DELAWARE, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This **1st** day of **June, 2016**, having considered Plaintiff Rodee Housing Corp.'s Motion for Summary Judgment, Defendant University of Delaware's Motion for Summary Judgment, a hearing on the Motions, and the record in this case, both Motions are **DENIED**. It appears that:

1. The instant matter involves contractual obligations pursuant to agreements between Plaintiff Rodee Housing Corp. ("Rodee") and Defendant University of Delaware (the "University").

2. The undisputed facts are that in 1986, Rodee constructed a fraternity house on a parcel of land owned by the University, located at 314 Wyoming Road in Newark, Delaware (the "Premises"), using the proceeds of a mortgage loan. The University partially guaranteed the mortgage loan. Rodee leased the Premises

from the University and sublet it to the Rho Deuteron Chapter of Alpha Epsilon Pi Fraternity ("AEPi").

3. On June 1, 1993, the University provided Rodee with a mortgage loan in the amount of $725,000 to pay off the mortgages against the Premises that Rodee owed to Wilmington Trust Company. The University and Rodee entered into two agreements in 1993 under seal to set forth the parties' understandings regarding the Premises.

4. The first agreement was a new ground lease (the "Lease") that terminated the previous 1986 lease. Exhibit A to the Lease was an agreement that both the University and Rodee entered into with AEPi (the "Agreement").[1]

5. The Lease had a twenty-five-year term beginning on June 1, 1993 and ending May 30, 2018 (the "Lease Term"), subject to possible earlier termination. It also included an option for the parties to extend it for an additional fifteen-year term if certain conditions were met.

6. In the Lease, the University and Rodee agreed that Rodee and AEPi had made an investment in the Premises, "together with accrued but unpaid interest, totalling in excess of Two Hundred Sixty Thousand Dollars

---

[1] In the event of any conflict between the terms of the Lease and the Agreement, the Agreement controls at the University's election. Lease § 23.

2

($260,000.00)" (the "Premises Investment").[2]   If the Lease was prematurely terminated (before the end of the Lease Term plus the fifteen-year extension) prior to the recovery of Rodee and AEPi's Premises Investment, then Rodee and AEPi were entitled to recover all or a portion of the Premises Investment from the net cash flow that was generated by the University's use of the Premises, in accordance with a formula set forth in the Lease (i.e., Rodee could recover the outstanding balance of the Premises Investment at the time of termination by the University).[3]   The Agreement stated that the amount of the Premises Investment could never be more than $315,000, consisting of $55,000 accrued interest and $260,000 principal.[4]

7.     During the Lease Term, AEPi caused significant damage to the Premises.  The University effectuated an early termination of the Lease (effective April 24, 2000) and reclaimed the Premises citing Rodee's failure to keep the house in good repair and to pay rent to the University.

8.     Since April 24, 2000, the University has not received any payments related to the Premises, other than imputed revenue.  The University has not relet the Premises to any third parties.

---

[2] Lease § 8.1.

[3] Lease § 8.3.

[4] Agreement § 4.6(b)

3

9. On September 15, 2000, the University's Vice President and Treasurer, Stephen Grimble, sent a letter (the "September 2000 Letter") to Rodee setting forth its plan for repayment of the Premises Investment to Rodee based on the early termination. In the September 2000 Letter, the University confirmed that it had terminated the Lease and that Rodee may be entitled to recover the balance owed on the Premises Investment plus accrued but unpaid interest. The University stated that it had no record of the unrecovered balance of the Premises Investment since 1993 and asked Rodee to provide a statement confirming whether the unrecovered balance of the Premises Investment had changed.

10. The September 2000 Letter further stated that, pursuant to Section 8.3 of the Lease, "if the leasehold interest value is greater than Rodee's unrecovered premises investment, the amount owed by the University to Rodee will equal the unrecovered premises investment plus simple interest at 7% per annum, repayable to Rodee out of net operating cash flow generated by rental of the property. Because the property cannot realistically be rented in its present condition, it must be repaired, the cost of which the University must recover with interest before any return of Rodee's premises investment."[5]

11. In accordance with the Lease, the University used Wilmington Trust Company to appraise the fair value of the leasehold interest before repairs.

---

[5] Pl.'s Opening Br. Ex. F. at 2; Def.'s Opening Br. Ex. C. at 1.

4

Wilmington Trust Company determined the fair value to be $570,382. The University advised Rodee that it must recover $207,930 (for past due sums, past due deposits, and the cost of repairs to the Premises) before it would use the net operating cash flow to pay any amount towards the Premises Investment. The University would rent the property and "advance the necessary $207,930 on condition that this amount, plus interest at 7%, will be credited against the net rental income projected in the appraisal which would otherwise be payable by the University as tenant, until the University has recovered the $207,930 plus interest."[6]

12. Based on the Wilmington Trust Company's appraisal, the University determined that the University's repayment of the Premises Investment to Rodee would begin in 2007. The University's calculation showed that the amount to be repaid from the net cash flow at the end of 2007 was $415,432 (the Premises Investment plus pre-termination interest and post-termination interest minus the year's operating cash flow repayment). The University stated that Rodee could expect to be paid in full by 2014.

13. In 2005, the University and AEPi signed a settlement agreement (the "Settlement Agreement") releasing any and all of AEPi's financial claims against the University. Rodee was not a party to the Settlement Agreement.

---

[6] *Id.*

5

14. In 2006, the office where Rodee maintained many of its financial documents flooded.

15. Apparently, there was no correspondence between Rodee and the University for approximately two years. On November 21, 2008, Marc Katz, General Counsel for AEPi, emailed the University's Vice President of Finance, Robert Specter, to notify the University that Rodee and AEPi had not received the payments that were expected to begin in 2007 as outlined in the University's September 2000 Letter.

16. On December 3, 2008, the University sent a letter to AEPi and asserted that the University does not owe AEPi or Rodee any money under the Lease because Rodee never provided the University with a statement of the unrecovered balance of the Premises Investment. The University also stated that Rodee's claim was barred by the statute of limitations because it was more than eight years after the termination of the Lease.

17. On March 23, 2011, Rodee sent a letter to the University (the "March 2011 Letter") informing the University that it had reviewed its records and it had determined that the Premises Investment was not reduced by any operating cash flow.

18. The University did not respond and has not made any payments to Rodee towards repayment of the Premises Investment.

19.  On May 22, 2013, Rodee filed this Complaint alleging breach of contract or, in the alternative, quantum meruit and unjust enrichment against the University. On June 18, 2013, the University filed its Answer. The University's Answer asserted the affirmative defenses of: (1) failure to state a claim upon which relief can be granted; (2) statute of limitations; (3) release; and (4) estoppel and waiver (because Rodee was to provide an accounting of its cash flow and expenses as a condition precedent to any payment by the University).

20.  On November 23, 2015, the University filed a Motion to Amend Answer (the "Motion to Amend") seeking to amend its Answer. The University's Amended Answer substituted its second affirmative defense of statute of limitations for the affirmative defense of recoupment. The Court granted the University's Motion to Amend.

21.  On December 1, 2015, the parties filed cross motions for summary judgment. This Court heard oral arguments on April 22, 2016 and April 29, 2016.

22.  Rodee asserts that summary judgment is appropriate because it is undisputed that the University prematurely terminated the Lease and did not repay the Premises Investment to Rodee. Specifically, Rodee seeks summary judgment because it alleges that the University breached Section 8.3 of the Lease, the University does not maintain a right of recoupment in this case, Rodee did not materially breach the Lease, and Rodee satisfied any conditions precedent required

by the Lease. Rodee demands repayment of the full Premises Investment ($260,000 plus interest accrued thereon, totaling $500,688.76) plus accruing interest at a rate of 7%, or $49.86/day.

23. The University asserts that summary judgment should be granted in its favor because Rodee breached the Lease and the Agreement first, thereby preventing Rodee from asserting any breach by the University. The University argues that Rodee breached by (1) not setting rents at an appropriate level; (2) not repairing the damage done to the house; (3) not rendering annual accountings; and (4) not properly amortizing the Premises Investment between 1993 and 2000.

24. The University also maintains that it is entitled to summary judgment because AEPi released the University from the Settlement Agreement;[7] Rodee cannot meet its burden of establishing the outstanding balance of the Premises Investment; and, if Rodee and AEPi had properly amortized the Premises Investment between 1993 and 2000, the balance would have been reduced. The University further argues that if Rodee is owed damages, the amount must be limited to a contractual cap of $315,000 and the University should be able to recoup $207,930 from any amount owed.

25. Summary judgment is appropriate when it is clear from the record "that there is no genuine issue as to any material fact and that the moving party is

---

[7] The University abandoned this argument at the hearing on April 29, 2016.

8

entitled to judgment as a matter of law."[8] If the movant establishes that no genuine issue of material facts exist, the burden shifts to the non-moving party to demonstrate that material facts remain in dispute.[9]

26. Where opposing parties have filed cross motions for summary judgment, neither party's motion will be granted if there is a genuine issue of material fact.[10]

27. Furthermore, summary judgment must be denied "[i]f it seems desirable to inquire more thoroughly into the facts in order to clarify the application of the law."[11]

28. Here, a genuine issue of material fact remains in dispute and a more thorough inquiry into the facts is desirable. The parties' obligations are disputed as well as whether obligations are properly offset. The facts permit a reasonable person to draw more than one inference.[12] Rodee argues that it is owed $500,688.76 (the full unrecovered balance of the Premises Investment plus 7%

---

[8] *Images Hair Solutions Medical Center v. Fox Television Stations, Inc.*, 2016 WL 425158, at *3 (Del. Super. Jan. 29, 2016) (quoting Del. Super. Ct. R. 56(c)).

[9] *Id.*

[10] *See* Super. Ct. R. 56(h); *Gallaher v. USAA Cas. Ins. Co.*, 2005 WL 3062014, at *1 (Del. Super. Nov. 14, 2005); *First Bank of Delaware, Inc. v. Fidelity and Deposit Co. of Maryland*, 2013 WL 5858794, at *3 (Del. Super. Oct. 30, 2013).

[11] *84 Lumber Co. v. Derr*, 2010 WL 2977949, at *3 (Del. Super. July 29, 2010); *Wilmington Trust Co. v. Thielemann*, 2002 WL 31814946, at *3 (Del. Super. Nov. 27, 2002).

[12] *See Motorola, Inc. v. Amkor Tech., Inc.*, 849 A.2d 931, 936 (Del. 2004).

interest) because the University terminated the Lease before the expiration of the Lease Term and Rodee has not recovered any amount of the Premises Investment. Rodee maintains that it operated at a deficit from 1986 through 2000 and has had no sources of income since the University's early termination of the Lease on April 24, 2000.

29. Furthermore, although the University concedes that it terminated the Lease prior to the expiration of the Lease Term, the University contends that it does not owe Rodee any amount of the Premises Investment.

30. Thus, there are several factual issues between the parties regarding obligations and the proper measure of the Premises Investment including whether Rodee breached the Lease before the University prematurely terminated it and the effect of such a breach on the repayment terms of the Premises Investment.

31. The University alleges that Rodee breached the Lease by failing to set rent at an appropriate level to be able to pay down the Premises Investment, failing to repair the damage done to the Premises, and failing to provide annual accounting statements to the University.

32. Rodee contends that any of its alleged breaches were not material and, even if they were, the alleged breaches occurred before the University's termination of the Lease on April 24, 2000. Therefore, Rodee argues, since the parties contracted for the University's early termination of the Lease (in Section

10

8.3 of the Lease and Section 4.7 of the Agreement), the Premises Investment must be paid as set forth in the University's September 2000 Letter even if Rodee breached the Lease and the Agreement prior to their termination.

33. The parties also dispute whether Rodee has met its burden of establishing the unrecovered balance of the Premises Investment.

34. The University contends that Section 4.6(a) of the Agreement required Rodee to render annual accounting statements to keep the University informed of the Premises Investment balance.

35. Rodee argues that it was only required to provide the University with annual accounting statements of changes to the Premises Investment and Rodee alleges that there were no changes to the Premises Investment. Rodee argues that, since there were no changes, it was not required to send such statements to the University and, in any event, it met its burden thereafter through its March 2011 Letter to the University.

36. The University alleges that a change was evidenced by billing statements sent from Rodee to AEPi during the Lease Term.

37. Rodee disagrees that the billing statements prove a reduction in the amount of the Premises Investment. Rodee argues that the Lease sets forth the balance of the Premises Investment at $260,000 and the internal statements

between Rodee and AEPi do not reflect a reduction in the amount owed by the University.

38. The parties further dispute whether the Lease and the Agreement required Rodee to reduce the balance of the Premises Investment during the Lease Term.

39. The University argues that the balance would have been reduced to approximately $176,000 by the year 2000 if Rodee had used its "best efforts" pursuant to Section 4.1 of the Agreement and had also properly amortized the loan pursuant to Section 4.6 of the Agreement.[13]

40. Rodee contends that the "best efforts" requirement set forth in the Agreement and the Lease is only relevant if Rodee wanted to extend the Lease after the expiration of the Lease Term. Rodee also argues that it was not required to amortize the amount of the Premises Investment, but even if it was, amortization would not have had an effect on the unrecovered balance of the Premises Investment.

41. The parties also dispute whether the University can recoup $207,930 from the balance owed if the Court determines that the University owes Rodee any amount of the Premises Investment.

---

[13] The University did not explain the method it used to calculate the reduced balance.

12

42. Rodee argues that it should not have to repay the University $207,930 out of its Premises Investment because the University already repaid itself through imputed revenue as set forth in the September 2000 Letter and the University is not entitled to a recoupment claim.

43. The University contends that it should not be bound by the repayment plan in its September 2000 Letter because it was not a contract between the parties and Rodee did not provide the requested statement confirming whether the Premises Investment had changed.

44. Lastly, the parties dispute whether the recoverable amount of the Premises Investment must be capped at $315,000 ($260,000 of principal plus $55,000 in interest) pursuant to Section 4.6(b) of the Agreement. Rodee contends that the contractual cap only applies to pre-termination interest and, therefore, it should also be able to recover post-termination interest above the $315,000 contractual cap. The University disagrees that the Premises Investment can ever be more than $315,000.

45. It is clear from the record that there are genuine issues of material fact still in dispute including the proper measure of the unrecovered balance of the Premises Investment pursuant to the Lease and the Agreement. Neither party has demonstrated that it is entitled to judgment as a matter of law.

For the foregoing reasons, the Court finds that genuine issues of material fact remain. Accordingly, both motions for summary judgment are **DENIED**.

**IT IS SO ORDERED.**

_____
Diane Clarke Streett
Judge

Original to Prothonotary

cc:    Stephen B. Brauerman, Esquire
       Sara E. Bussiere, Esquire
       William E. Manning, Esquire
       Dawn Kurtz Crompton, Esquire
       Jennifer M. Becnel-Guzzo, Esquire